[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Pursuant to an Order entered on February 12, 1992, the Superior Court the Honorable Robert D. Krause presiding, approved the application of Maurice C. Paradis, then Director of the Department of Business Regulation, as Receiver of Heritage Loan and Investment Company ("Receiver") to have the Court appoint a master with respect to claims relating to "off-line" deposit accounts at Heritage Loan and Investment Company ("Heritage"). See the Order dated February 12, 1992. As a result of said Order. William J. McAtee, Administrator/Master of the Superior Court was appointed as Master in the above-captioned receivership.
The Order provided that the Master
 "is appointed . . . for the purpose of hearing and determining the claims filed with the receiver relating to off-line deposit accounts, which claims shall be deemed to include claims to funds evidenced by handwritten or typewritten savings passbooks claims to funds alleged to have been withdrawn without the depositor's authority to do so claims to funds evidenced by safekeeping receipts. and claims to any funds which are not verifiable on the computer records maintained by Heritage Loan and Investment Company."
 "That Master McAtee shall have all of the powers of a Justice of the Superior Court with respect to the hearings and determination of off-line deposit account claims including, without limitation those powers enumerated in Rhode Island General Laws 8-2-11.1 (1985 Reenactment)"
R.I.G.L. 8-2-11.1 provides, in pertinent part that:
 "Such administrator/master may be authorized (1) To regulate all proceedings before him: (2) To do all acts and take all measures necessary or proper for the efficient performance of his duties; (3) To require the production before him of books, papers, vouchers, documents and writings; (4) To rule on the admissibility of evidence; (5) To issue subpoenas for the appearance of witnesses. to put witnesses on oath to examine them and to call parties to the proceeding and examine them upon oath;"
In accordance with the above a hearing was held on the above referenced claim on November 3, 1993 and June 8, 1994. At the conclusion of the hearing the parties submitted Post-Hearing Memoranda.
Claimant alleges that on February 22, 1985 the Claimed Account was opened at Heritage and is evidenced by a Christmas Club card issued by Heritage. This account was handwritten by Joseph Mollicone. Jr., President of Heritage, and given account number 0001315. As of the filing of the instant claim the balance in the account is reported to be $24,500.
No record of this account was found at Heritage and therefore, is considered an "off line" account for the purpose of these hearings. However a search of Heritage records does refer to several transactions listed to a "Frank Caliri" or simply "Caliri" that seem to coincide with the transactions in the Claimed Account.
Claimant testified at the hearings that he opened the account with Heritage and was unaware that this account was any different than any other account held by Heritage in the usual course of business. Claimant admitted that no deposit slips were ever signed or presented in order to either deposit or withdraw funds from the Claimed account. Also, during this same time period. Claimant did maintain other accounts at Heritage which were "on Line" i.e. recorded in the records of Heritage. For these accounts. Claimant did use the normal deposit and withdrawal slips and was in possession or computer generated rather than handwritten passbooks. As to the Claimed Account. Claimant testified that the reason that he didn't question the handwritten account was because he was told that the computer was "down" on the days that he transacted business in that account. If that is the case, then this Court is asked to believe that on all eight days when business was transacted in the Claimed Account the Heritage computer system was not working while during the same period that same system was always working when Claimant transacted business in his other accounts.
Also worthy of note, is Claimant's testimony that it was his practice to "warn" Mollicone at least a day in advance of any withdrawal from this account. Claimant admitted that this was not the procedure that he followed for any other accounts.
Joseph Mollicone, Jr., as noted above, also testified at the hearing. According to Mollicone, the claimed Account was opened not in the usual course of business at Heritage but was rather a separate agreement between Claimant and him personally. Mollicone took possession of Claimant's funds, did with them what he wished, and was personally liable for both interest as well as principle. As part of this agreement claimant understood that no record would be kept of these transactions in the usual and customary records of Heritage. The Christmas Club form given to Claimant was the only evidence of this agreement.
Not surprisingly, Mollicone's credibility was repeatedly attacked at the hearing. This Court is well aware that Mollicone testified after being convicted of numerous felony charges in Superior Court Likewise, the Court is aware of the lengthy sentence imposed on those charges. Mollicone freely admitted that he would very much like to see that sentence reduced and is even hopeful that this testimony would be a step in the direction of sentence reduction. That being the case, this Court sees no advantage to Mollicone to risk a perjury conviction which would most certainly end any hope for his release from incarceration. That is not to imply that everything Mollicone testified to is accepted without question by this Court, in fact, this Court finds some of Mollicone's interpretations of events as highly suspect. Nevertheless Mollicone's testimony has been found to be most helpful by the Court.
When a party makes a claim for funds allegedly on deposit at a financial institution, the party so claiming bears the burden of proof to establish the existence of the account so claimed.O'Neil v. New England Trust Co., 28 R.I. 311, 67 A. 63 (1907). A passbook reflecting such a deposit is prima facie evidence of such a deposit. However, the Receiver may introduce evidence to refute the prima facie case.
The term "deposit" is defined at 12 U.S.C. § 1813(1) which state in pertinent part as follows:
 (1) The unpaid balance of money or its equivalent received or held by a bank or savings association in the usual course of business and for which it has given or is obligated to give credit, either conditionally or unconditionally to a commercial, checking savings time or thrift account or which is evidenced by a certificate of deposit thrift certificate investment certificate, certificate of indebtedness or other similar name, or a check or draft drawn against a deposit account and certified by the bank or savings association or a letter of credit or a travelers check on which the bank or savings association is primarily liable. . .
 (3) money received or held by a bank or savings association, or the credit given for money or its equivalent received or held by a bank or savings association in the usual course of business for a special or specific purpose regardless of the legal relationship thereby established including without being limited to escrow funds funds held as security for an obligation due to the bank or savings association or others (including funds held as dealers reserves) or for securities loaned by the bank or savings association funds deposited by debtor to meet maturing obligations, funds deposited as advance payment on subscriptions to United States Government securities funds held to meet its acceptances or letters of credit and withheld taxes; Provided that there shall not be included funds which are received by the bank or savings association for immediate application to reduction of indebtedness to the receiving bank or savings association or under condition that receipt thereof immediately reduces or extinguishes such indebtedness.
In Federal Deposit Insurance Corp. v. Philadelphia GearCorp., 476 U.S. 426, 106 S.Ct. 1931, 90 L.Ed.2d 428 (1986), the Supreme Court listed the standards to be met in order to be classified as a "deposit". The Court stated that to qualify as a "deposit" under 12 U.S.C. § 1813 (l)(1), it must be shown that: (1) there is an unpaid balance; (2) of hard earnings; (3) received or held by the bank; (4) in its usual course ofbusiness (emphasis added); (5) for which it has given or is obligated to give credit. In Philadelphia Gear, the Court held that a stand-by letter of credit did not fall within the meaning of an insurable "deposit" because it was only a contingent obligation and did not represent "hard earnings".
In the instant case, this Court finds that the testimony of Mollicone is credible and is consistent with the evidence presented. On the other hand. Claimants testimony is simply incredible. Claimant maintained both on line and off line accounts at the same time yet he failed to notice that the procedure to be followed in making those transactions as well as the evidence of such transactions were totally different. For his on line account he presented deposit/withdrawal slips but for the Claimed Account he did not. For his on line account he received a computer generated passbook for his Claimed Account he has only handwritten receipts. Claimants explanation that the computer was not working or "down" on those days is hardly worthy of comment. Finally the handwritten Heritage document used to evidence the Claimed Account is clearly marked as a Christmas Club although at no time during the hearing did Claimant ever state that that was the type of account that he opened.
Therefore this Court finds that Claimant knew or should have known that the Claimed Account was not in the usual course of business at Heritage and is not a deposit account as referred to above. Claimant is not entitled to priority for his claim.
Counsel will prepare an order in accordance with this decision.